DELAWARE COMPENSATION RATING BUREAU,
Plaintiff,

*vs.*

WILLIAM J. GORDY, FRANCIS A. DOLAN and RALPH W. WINE, as
members of the Industrial Accident Board of the State of Delaware, and ROBERT A. SHORT, as Insurance Commissioner of the
State of Delaware,
Defendants.

*New Castle, August 31, 1965.*

*James M. Tunnell, Jr.,* of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

*Ruth M. Ferrell,* Deputy Atty. Gen., Wilmington, for defendants.

MARVEL, Vice Chancellor : Plaintiff is an association duly licensed by the State of Delaware to perform the functions of a so-called rating organization, its act here in issue being concerned with rate planning or scheduling for those insurance companies which provide workmen's compensation insurance coverage in Delaware. In other words, under provisions found in *Title* 18 *Del.C.* § 2306 *et seq.,* each insurance company engaged in the business of issuing workmen's compensation insurance for Delaware employers, upon subscribing to plaintiff's service, becomes entitled to receive on a non-discriminatory basis the benefits of plaintiff's knowledge and experience in the field of fixing appropriate rates for such type of insurance coverage. The dispute before me results from the fact that the present Delaware Code, which was enacted in 1953, contains sections which purport to assign the function of passing on rates for workmen's compensation insurance to both the Industrial Accident Board and the Insurance Commissioner.

The question here in issue is accordingly whether one or two governmental agencies are lawfully charged with the responsibility of approving the rates recommended by plaintiff for workmen's compensation insurance. Plaintiff contends that its rate setting services have been furnished to insurance companies for many years without interference by the Industrial Accident Board and should continue to be so furnished subject only to disapproval by the State Insurance Commissioner. The Attorney General, who represents the interests of both of the named defendants, takes the position that there must not only be a failure to disapprove on the part of the Insurance Commissioner but also approval by the Industrial Accident Board in order for a rate filing to go into effect. The named defendants are, as indicated, the members of the Industrial Accident Board as well as the Insurance Commissioner now in office, they being the governmental officials immediately concerned with the administration of workmen's compensation matters in Delaware.

*Title* 18 *Del.C.* § 2304 provides that every insurance company doing business in Delaware may meet the statutory requirements for filing the rating schedule or plan which it proposes to adopt for insurance coverage by becoming a subscriber to a rating bureau such as plaintiff, the latter being an organization authorized to perform the statutory function of filing such a rating schedule or plan. The statute, § 2304(c), goes on to provide that filings made by a licensed rating organization, " * * * shall be deemed to meet the requirements of this chapter (*Title* 18 *Del.C. Chap.* 23) unless disapproved by the Commissioner * * * ."

The Industrial Accident Board came into being in 1917 as a part of a statutory plan to provide insurance coverage against the types of injury normally sustained by industrial workers in the course of their employment. In 1919, the Legislature granted such board authority to approve rates sought to be charged by the insurance companies engaged in insuring employers against liabilities imposed by the workmen's compensation laws. However, in 1947, under the terms of a statute which is now found in substantially its original form in *Title* 18 *Del.C. Chap.* 23, and which is silent as to the earlier rate-making functions of the Industrial Accident Board, the Insurance Commissioner of Delaware was granted authority over the setting of rates for insurance companies doing business in Delaware on the basis of manual rates or rating plans for all risks other than inland marine coverage. According to the allegations of the complaint, following the enactment of the provisions now found in 18 *Del.C. Chap.* 23 and until shortly prior to the filing of this suit, the Industrial Accident Board did not interfere with the rate-setting functions of the Insurance Commissioner despite the fact that the terms of the 1917 law, which had not been expressly repealed, provided that rates filed by insurers would not become effective until approved by such board. In the interim, plaintiff, according to its complaint, while taking the position that such earlier statute had been repealed by the 1947 statute, nonetheless furnished the Industrial Accident Board with copies of all of its rate filings, none of which was questioned by such board until March 24, 1965 when the Industrial Accident Board purported to deny "a request for approval" of plaintiff's amended rate filing of February 18, 1965. Such ruling of March 24 was

followed up by a letter of March 25 which submitted an alternate approved schedule of rate increases and requested that such alternate rates be put into effect. Recognizing the possibility of error on its part as to the proper rating schedule to be applied in workmen's compensation coverage, plaintiff responded by filing this action on March 31. However, relying on the provisions of *Title* 18 *Del.C. Chap.* 23, plaintiff, on April 1, 1965, nonetheless put into effect the rates which it had submitted to the Insurance Commissioner as provided in the statute, which rates had not been disapproved by the Insurance Commissioner.

Plaintiff, in seeking a declaratory judgment as to its claimed right to rely on 18 *Del.C. Chap.* 23 for the establishment of proper workmen's compensation insurance rates, takes the position that the 1947 statute alluded to above impliedly repealed the earlier authority of the Industrial Accident Board to set such rates. In the alternative, it is argued by plaintiff that if such repeal was not effected as contended, the earlier statute is unconstitutional for failure to provide a proper hearing for an aggrieved party after refusal by the Industrial Accident Board to approve a rate filing. Stated more specifically, plaintiff asks this Court to determine that the rates put into use by it on April 1, 1965, after failure of the Insurance Commissioner to disapprove, are legally proper and effective for either of two reasons: (a) that the statutory sections on which the Attorney General relies, namely *Title* 19 *Del.C.* §§ 2381-2384, were impliedly repealed by the enactment of 1947 legislation on the same subject which provided that all rate filings such as the one in issue be made with the Insurance Commissioner, and alternatively: (b) that, in any event, the earlier statute relied on by the Attorney General, in its failure to contain a provision for a hearing after disapproval by the Industrial Accident Board of a rate filing, is violative of the due process of law provisions of the United States Constitution.

When the Legislature in 1947 enacted laws, which, *inter alia,* granted the Insurance Commissioner jurisdiction over the fixing of rates for workmen's compensation insurance, it provided in 46 *Del. Laws, Chap.* 161, § 4 that all statutes inconsistent therewith were repealed "* * * but only to the extent of any such inconsistency."

It is thus clear that none of the provisions of earlier laws on the subject of workmen's compensation insurance rates was expressly repealed. Furthermore, the earlier statutory provisions, which granted the Industrial Accident Board authority to pass on the filing of workmen's compensation rates, were included in the 1953 Delaware Code, the same being found in 19 *Del.C.* §§ 2381-2384.

Plaintiff has moved for judgment on the pleadings, and the Attorney General in his brief and at oral argument has agreed (with a condition next considered and rejected) that the case is in a proper posture for decision. There being, in my opinion, an actual controversy before me cognizable under the declaratory judgment act (10 *Del.C.* § 6501), this is the Court's opinion on plaintiff's motion.

[█] Despite the fact that a motion to dismiss was not filed, the Attorney General's brief takes a preliminary position that plaintiff is in the wrong court, the point made being that the sections found in 19 *Del.C.* §§ 2381-2384 not having been expressly repealed, the proper procedural step for plaintiff to take in its effort to overturn the action of the Industrial Accident Board on plaintiff's purported rate filing is to file an action in the Superior Court, as contemplated in *Title* 19 *Del.C.* § 2384(b), on the grounds that the Board's ruling is " * * * unlawful or unreasonable * * * ." In advancing this basic contention it is argued that the repeal of a statute by implication is to be avoided wherever possible. It is further contended that such presumption is here strengthened by the fact that the earlier provisions which gave the Industrial Accident Board authority to determine workmen's compensation insurance rates were included in the 1953 Delaware Code where they are found in *Title* 19, *Chap.* 23. The point is, however, that it is not and could not be argued that the 1947 statute has in some ways been repealed. Accordingly, inasmuch as the later statute relied on by plaintiff, namely 18 *Del.C.* § 2318, provides for review in this Court of any order, decision or act of the Commissioner (even were the Board's failure to lay the groundwork for an appeal to Superior Court as contemplated in 19 *Del.C.* § 2384 not an impediment to any sort of companion action against the Board in Superior Court) it is clear that plaintiff has proceeded in a proper forum.

Turning to plaintiff's pending motion, the Attorney General, after reiterating his general contentions about repeal by implication, goes on to argue that such type of repeal can not be found if both an earlier and later statute can reasonably be construed together, *State v. Fahey*, 2 *W.W.Harr.* 504, 126 *A.* 730, and *Philadelphia v. Mayor and Council of Wilmington*, 30 *Del.Ch.* 213, 57 *A.2d* 759, it being additionally pointed out that the absence of any showing of legislative intent to repeal the provisions of *Title* 19, *Chap.* 23 here in issue is made more obvious by reason of the inclusion of such provisions in the 1953 Delaware Code. Thus, the Attorney General's brief concludes that the Legislature has expressed a clear intent that two governmental agencies, namely the Insurance Commissioner and the Industrial Accident Board, must reach an agreement before a rating organization such as plaintiff may have an insurance schedule put into force and effect. It is pointed out, of course, that in the case at bar the Industrial Accident Board has disapproved of plaintiff's filing. In other words, according to the Attorney General, disapproval by either State agency of proposed insurance rates may effectively block a filing such as the one here in controversy. And while it is conceded that the Insurance Commissioner is charged with the general supervision, control and regulation of all types of Delaware insurance businesses within his jurisdiction, according to the Attorney General's brief it is the Industrial Accident Board which is uniquely qualified to pass on the amount of compensation to be paid to workers injured in industrial accidents, it being urged that in order to perform such primary function such board must necessarily have the power to pass on the rates to be charged by the various companies engaged in providing insurance coverage in Delaware.

■■ The doctrine of implied repeal is, as the Attorney General points out, not favored by the law. Nonetheless, the presumption against the application of the doctrine is readily overcome if it is made to appear that the legislative branch did not intend that two statutes on the same general subject should operate concurrently. In other words, can it here be said that the Delaware Legislature did not intend that the two statutory rate setting plans here in issue should stand together and in some way be made to operate jointly?

██ In approaching the question to be decided, certain presumptions may be relied on. First, a legislative body is presumed to intend the enactment of a consistent body of law, and where such cannot be achieved without the nullification of an earlier law, a repeal by implication necessarily follows. Furthermore, while courts are understandably reluctant to presuppose such a conflict, once it is clearly shown to exist, a repeal by implication must be inferred, *Sutherland on Statutory Construction (3rd Ed.* 1943) § 2012. In the cases cited by the Attorney General, the latest being *Improved Parcel of Land v. State Highway Dept. (Del.Sup.Ct.),* 195 *A.2d* 390, no clear inconsistency between a later statute and an earlier statute or the common law was found to exist. However, in a number of other Delaware cases courts have found such statutory inconsistencies to exist in a wide variety of situations and have unhesitatingly applied the statutory doctrine of implied repeal. See for example *State ex rel. Green v. Foote,* 5 *W.W.Harr.* 514, 158 *A.* 245.

Where there are legislative journals or other evidence upon which a court may rely for the determination of intent, the problem of repeal is simplified. In fact, where there is a legislative awareness of inconsistency, the result is in effect an express repeal. However, the usual problem for the Court in a true case of implied repeal is that of finding a design for supplanting the entire subject matter of earlier legislation on a particular subject or a situation in which a subsequent statute contains legislative enactments which cannot possibly be reconciled with earlier law.

To begin with, the title to the 1947 legislation relied on by plaintiff clearly indicates that the law to be adopted was designed to add to the duties of the Insurance Department by providing for the regulation and control of insurance rates and rating organizations. The enactment of such law was the result of the passage of *Public Law* 15-79 (15 *U.S.C.* § 1011 *et seq.*), enacted by the Congress of the United States in 1945, which law declared it to be in the public interest to have the regulation and taxation of the business of insurance continued as a state function. After reciting the act of Congress above noted, the statute now found in *Title* 18 *Del.C.* § 2302(a)(1) specifically provided that Chapter 23 was to apply to all casualty

insurance, including workmen's compensation. And it is significant that the section now found in 18 *Del.C.* § 311 authorized the Insurance Commissioner to employ a competent actuary " * * * to assist him in respect to the rating functions provided for in this title * * * ." Next, *Title* 18 *Del.C.* §§ 2303-2312 outlines a complete and orderly procedure for the filing and fixing of insurance rates, while § 2318 provides for judicial review of orders of the Insurance Commissioner by the Court of Chancery. The steps outlined in the above legislation were all dealt with in a less comprehensive and, in my opinion, less satisfactory manner in the earlier legislation now found in 19 *Del.C.* §§ 2381-2384, which rate fixing procedure provided for a review in the Superior Court.

A reading of the two sets of statutory plans here involved satisfies me that the doctrine of implied repeal by substitution of subject matter here controls, *Husbands v. Talley*, 3 *Penn.* 88, 47 *A.* 1009, *Mayor and Council of Middletown v. Peverly*, 2 *W.W.Harr.* 443, 125 *A.* 421, and *State ex rel. Green v. Foote, supra.* And even though it were not entirely clear that the entire field of rate fixing for workmen's compensation insurance had been preempted by the later statute, I am of the opinion that on a narrower basis the specific procedures for rate fixing found in the earlier statute can not be reconciled with those in the later. In other words, the statutory direction found in 19 *Del.C.* § 2381(c) was that approval by the Industrial Accident Board would follow a finding that rates were " * * * adequate and reasonable for the risks to which they respectively apply * * * ." Conversely, the statute provided that approval of any rate be withdrawn " * * * which discriminates unfairly between risks of a like degree of hazard * * * ." 18 *Del.C.* § 2303(2), on the other hand, provides " * * * Rates shall not be excessive, inadequate or unfairly discriminatory * * * ." Thus, the area in which the Insurance Commissioner may function before expressing disapproval under 18 *Del.C* § 2304(c) is considerably broader than 'that delineated for the Industrial Accident Board in the earlier statute. In other words, under the later statute fair insurance rates are to be determined not only on principles of non-discrimination but with a view towards not only providing a fair return for an insurer but at the same time preventing the fixing of excessive rates which would

not be in the public interest. Therefore, to read these rate fixing sections as jointly operative could, in my opinion, lead only to confusion were the contentions of the Attorney General to be accepted. Compare *Girard Trust Co. v. City of Philadelphia,* 336 *Pa.* 433, 9 *A.2d* 883. He cites no case in which two state agencies have been granted dual control over the fixing of workmen's compensation rates. In fact, rate making is now almost universally entrusted to rating bureaus such as plaintiff, *Larson, Workmen's Compensation Law, Chap. XVII,* § 92. In addition, provisions for obtaining approval of rate deviations under the two sets of rate filing provisions are inconsistent; different penalties are fixed for violations of each set of statutory provisions, and, as noted above, the right to a hearing is more limited under the earlier statute. Finally, judicial review in different forums could lead only to confusion and chaos in settling the final rates to be applied. So, on the narrower basis of inability to make the earlier provisions found in *Title* 19 *Del.C.* §§ 2381-2384 stand with and complement the later enacted provisions on workmen's compensation insurance rate fixing found in 18 *Del.C. Chap.* 23, the earlier statutory provisions must be held to have been repealed by implication.

The Attorney General contends, however, that in any event the doctrine of implied repeal cannot be applied here because even were the repeal of 19 *Del.C.* §§ 2381-2384 in 1947 to be conceded, the enactment by the Legislature of the Delaware Code of 1953 resulted in a revival of the 1917 legislation now found in *Title* 19 *Del.C. Chap.* 23, giving it the same date, as it were, as the later legislation. Plaintiff counters by pointing out that the statute providing for the creation of the Revised Code Commission found in 47 *Laws of Delaware, Chap. 377,* § 4 states that " * * * in no case is the said Commission authorized to omit, add to, amend, alter, change or vary the meaning of any existing law to be embraced in said work." And while the case of *Monacelli v. Grimes,* 9 *Terry* 122, 99 *A.2d* 255, is authority for the proposition that legislative change was accomplished in the 1953 Code (the implications of which were probably not foreseen), there is no doubt that a very special situation was there presented for decision. In reaching its decision, the Court was required to reconcile the fact that the Code is positive law with a very strong

presumption that no change in substance or meaning was intended by the Code's enactment. It is quite clear that the Revised Code Commission was instructed to make no changes in substantive law, *Dooley v. Rhodes,* 11 *Terry* 479, 135 *A.2d* 114. Furthermore, it is established that the 1915 Code, which was enacted in a manner substantially similar to the 1953 Code (Revised Code of Delaware 1915, *Title* 26, §§ 4897 and 4898), did not do away with the principle that a later enacted statute must govern when it is read in conjunction with an earlier inconsistent law. In re *Burr's Will,* 12 *Del.Ch.* 102, 107 *A.* 449, and In re *Will of Merservy,* 4 *W.W.Harr.* 482, 155 *A.* 593.

■ I accordingly conclude that the inclusion of *Title* 19 *Del.C. Chap.* 23 in the 1953 Code did not change the fact that such legislation was enacted in 1917 and was thereafter vulnerable to the possibility of repeal by implication. Having held earlier in this opinion that a repeal of this type was effected in 1947, plaintiff's motion for judgment on the pleadings will be granted.

In view of the result here reached there is no need to consider the litigants' contentions as to the constitutionality of *Title* 19 *Del.C.* §§ 2381-2384 insofar as such sections deal with an aggrieved party's right to a hearing and to judicial review.

Order on notice.