The BOARD OF ASSESSMENT REVIEW OF NEW CASTLE COUNTY, Respondent Below, Appellant and Cross-Appellee,

v.

The SILVERBROOK CEMETERY COMPANY, a Delaware Corporation, et al., Petitioners Below, Appellees and Cross-Appellants.

Supreme Court of Delaware.

Submitted June 15, 1977.

Decided Aug. 11, 1977.

Motion for Reargument Denied Sept. 7, 1977.

---

Joseph M. Bernstein and William Annos, New Castle County Dept. of Law, Wilmington, for respondent below, appellant and cross-appellee.

Bruce M. Stargatt, Richard H. May, of Young, Conaway, Stargatt & Taylor, Wilmington, for petitioners below, appellees and cross-appellants, The Silverbrook Cemetery Co. and Gracelawn Memorial Park, Inc.

James M. Mulligan, Jr., John R. Bowman, Henry E. Gallagher, Jr., of Connolly, Bove & Lodge, Wilmington, for petitioner below, appellee and cross-appellant, Interstate Cemetery Company.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

HERRMANN, Chief Justice (for the majority):

In these tax assessment cases, the main issue in this consolidated appeal is whether Article VIII, § 1 of the Delaware Constitution[1] empowered the New Castle County Council to repeal by ordinance property tax exemptions previously created by the General Assembly. The Superior Court held that it did not. See 355 A.2d 908. We affirm.

## I.

These cases arise from the tax assessments of three cemetery properties made subsequent to the passage of New Castle County Ordinance 74–61,[2] a 1974 enactment

---

1. Article VIII, § 1, as amended in 1971, provides in part:

   " * * * County Council of New Castle County and the Levy Courts of Kent and Sussex Counties are hereby authorized to exempt from county taxation such property in their respective counties as in their opinion will best promote the public welfare. The county property tax exemption power created by this section shall be exclusive as to such property as is located within the respective counties. * * * "

2. Ordinance 74–61, adopted in 1974, provides that cemetery property qualifies for tax exempt status, upon the following conditions:

   "§ 6.0 *Cemetery Property:* Property used exclusively for or planned for the burial or other disposal of dead persons shall be exempt from all real property taxes, *provided that the owner is irrevocably dedicated to charitable purposes* and provided that upon the liquidation, dissolution, or abandonment of the owner, none of the assets of the owner nor the benefits from the property will inure to the benefit of anyone except a community chest, fund, foundation, government or governmental agency or corporation organized and operated for charitable or religious purposes; and provided that the use of such property is open to the general public regardless of sex, race, color, or national origin; and provided that the owner and/or the

establishing a comprehensive schedule of property tax exemptions for the County. Appealing the assessments to the County Board of Assessment Review, the three owning-corporations (hereinafter "Cemeteries") claimed statutory exemption under 9 *Del.C.* § 8104.[3] The Board rejected the claims, concluding that the tax status of the Cemeteries was governed by the Ordinance rather than § 8104, and that the Cemeteries were disqualified for exemption thereunder because they were profit-making operations.

On appeal, the Superior Court reversed the Board holding that § 8104 governed, and remanded for the Board's determination the question of whether the Cemeteries met § 8104 qualifications. See *Silverbrook Cemetery Co. v. Board of Assessment Review of New Castle County,* Del.Super., 355 A.2d 908 (1976). The Board appeals.

## II.

The Board contends that the 1971 amendment of Article VIII, § 1, when implemented by Ordinance 74–61, impliedly repealed § 8104 and thereby rescinded the Cemeteries' tax exempt status which had existed for decades under § 8104. Basically, the County contends that two legislative purposes[4] can be discerned from the revision of Article VIII, § 1: (1) delegation to the Counties of the authority to repeal prior acts of the General Assembly creating tax exemptions; and (2) delegation to the Counties of the exclusive authority to create all future property tax exemptions. We agree with the second, but not the first.

■ Unquestionably, the 1971 Amendment of Art. VIII, § 1 delegated to the Counties, prospectively, the exclusive authority to grant property tax exemptions, a power which had been theretofore exercised by the General Assembly. But there is no grant to the Counties anywhere in Art. VIII, § 1, expressed or implied of a retroactive power permitting a repeal of prior acts of the General Assembly such as § 8104. On the statute books today, § 8104 stands unrepealed by the General Assembly and unquestioned by the codifiers. It is noteworthy that the County withheld any action under the 1971 Constitutional Amendment until 1974.

■ The law does not favor repeal by implication. See, e. g., *Mayor & Council of Wilmington v. State ex rel. DuPont,* Del. Supr., 57 A.2d 70, 79 (1947); *Kelley v. Mayor & Council of the City of Dover,* Del.Ch., 300 A.2d 31 (1972). Rather, there is a presumption favoring the consistency of legislative enactments. *Delaware Rating Bureau v. Gordy,* Del.Ch., 213 A.2d 706, 709 (1965). The result is the rule that the doctrine of implied repealer will apply only if an "irreconcilable inconsistency" exists between pre-existing and subsequent enactments, and then only to the extent necessary to give meaning and effect to the latest enactment. See *Mayor & Council of Wilmington v. State ex rel. DuPont, supra* at 79; *Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed. 2d 290 (1974). Applying the "irreconcilable inconsistency" standard, we conclude that no

---

property meet provisions 5.1, 5.2, and 5.4 of this Ordinance." (Emphasis supplied)

**3.** 9 *Del.C.* § 8104 provides in part:

"§ 8104. Specific organizations and purposes.

"No real property owned and used by the organizations listed below . . . except that which is held by way of investment, shall be liable to taxation and assessment for public purposes by any county or other political subdivision of this State.

. . .

Burial lots and cemeteries."

The *General Assembly* promulgated § 8104 pursuant to the authority granted it by the "original" Article VIII, § 1, which provided:

"§ 1. Uniformity of taxes; collection under general laws; exemption for public welfare purposes

"Section 1. All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, but the General Assembly may by general laws exempt from taxation such property as in the opinion of the General Assembly will best promote the public welfare."

**4.** Amendment to the Delaware Constitution is accomplished by the approval of two thirds of all the members elected to each House of two successive General Assemblies, Del.Const., Art. XVI, § 1.

such repugnancy exists between Art. VIII, § 1 and § 8104. The language of Article VIII, § 1 fails to "clearly and unmistakably" evidence a purpose to permit repeal of a pre-existing State statute by a County ordinance. *Sayers v. Wilmington & N. R. Co.*, Del.Super., 49 A. 931 (1901). If this had been the purpose of Art. VIII, § 1, and if it had been intended to "wipe the slate clean" of the many exemptions accumulated over the years within § 8104 by granting to the Counties the erasing powers, it would have been easy for the drafters to have expressly provided therefor. It is not reasonable to assume, in our opinion, that two successive General Assemblies intended to delegate a statute-repealing power to a subordinate legislative body without explicitly providing therefor. The delegation of such power by a senior legislative body to a junior legislative body is too rare to be founded upon implication.

Accordingly, we agree with the Superior Court that Art. VIII, § 1 granted to the County Council a prospective power only, and that the Cemeteries' exemptions created by 9 *Del.C.* § 8104 were not repealed by Ordinance 74–61.

### III.

By cross-appeal, the Cemeteries contend that the Superior Court erred in remanding the cause to the Board for consideration of the tax exempt status of the Cemeteries under the qualifying provisions of § 8104. See 355 A.2d at 911.

■ It appears that the remand went beyond the scope of the appeal to the Superior Court. The litigation had been confined from the outset to the validity and effect of Ordinance 74–61. The question of the § 8104 eligibility of the properties involved was not raised until late in the Superior Court proceedings; it was not litigated before the Board.

We conclude, therefore, that the scope of the litigation should not have been enlarged by the Superior Court's remand.

\*     \*     \*     \*     \*     \*

Affirmed as to the inapplicability of the Ordinance; reversed as to the remand.

DUFFY, Justice (dissenting):

I regret that I cannot agree with the conclusion or the rationale adopted by a majority of the Court. The result of both, I think, is to place the entire area of exemption from property taxation in all Counties of the State in a limbo of legal and fiscal uncertainty. And in so doing, I think that the ruling almost neutralizes that part of Article VIII, § 1 which is in issue here.

Article VIII, § 1, as amended in 1971, provides in part:[1]

"Section 1. All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws passed by the General Assembly. County Council of New Castle County and the Levy Courts of Kent and Sussex Counties are hereby authorized to exempt from county taxation such property in their respective counties as in their opinion will best promote the public welfare. The county property tax exemption power created by this section shall be exclusive as to such property as is located within the respective counties. . . ."

The Constitutional language plainly and clearly, gives New Castle County (and the

---

1. The 1971 Amendment is not the present Article but it may again be enacted as shown by the recent history of Article VIII, § 1. Thus, on May 18, 1976 a proposed amendment was given final approval; it reads in part:

"The county property tax exemption power created by this section shall be exclusive as to such property as is located within the respective counties with respect to real property located within the boundaries of any incorporated municipality; the authority to exempt such property from municipal property tax shall be exercised by the respective incorporated municipality; then in the opinion of the said municipality it will best promote the public welfare."

See 60 *Del.L.* chs. 437–38 (and 59 *Del.L.* ch. 446 for the initial approval). A proposed amendment to return to the same language of the 1971 Amendment was given first approval on June 30, 1976. 60 *Del.L.* ch. 521.

other Counties as well), authority "to exempt . . . such property . . . as in [its] . . . opinion will best promote the public welfare." And that power "shall be exclusive." The words could not be more precise. Nothing whatever is said about the preservation of prior exemptions nor about the General Assembly's on-going power to continue them.

While we do not have the benefit of findings, debates or hearings with respect to this Amendment one need only look to its language and the complex of existing statutory exemptions to perceive its purpose. Before the 1971 Amendment, property tax exemption could be had only by statute and the result was a hodge-podge of selective acts dating back to at least 1852.[2] The

2. The accumulations of the years are listed in 9 *Del.C.* § 8104 which provides:

"No real property owned and used by the organizations listed below or for the purposes stated below, except that which is held by way of investment, shall be liable to taxation and assessment for public purposes by any county or other political subdivision of this State.

"Historical Society of Delaware.

New Castle Historical Society.

All incorporated relief associations for volunteer firemen (limit, $25,000 per association).

Nonsectarian Young Women's Christian Associations.

Nonsectarian Young Men's Christian Associations.

Salvation Army.

Burial lots and cemeteries.

Children's Home, Inc.

Layton Home for Aged Colored Persons, Incorporated.

Sunday Breakfast Mission.

The Family Society.

Woods Haven School for Girls.

Ferris Industrial School.

Florence Crittenton Home.

All incorporated homes of refuge for reformed women (limit, $25,000 per home).

Charitable homes for incurables (limit $15,000 per home).

Day nurseries or homes for babies owned by any corporation or association maintained by charity (limit $50,000 per nursery or home).

Charitable incorporated homes or associations for deaconesses (limit, $10,000 per home).

Delaware Commission for the Blind.

Charitable incorporated settlement houses.

Soldiers' rest rooms.

Incorporated college fraternities (limit, $10,000 per fraternity).

Wilmington Institute Free Library.

Public parks in and near Wilmington.

American Legion Posts.

Veterans of Foreign Wars Posts.

Delaware Anti-Tuberculosis Society.

Delmar Lions Club.

Polish Army Veterans of Delaware, Post 48 Inc.

Lions Club of Smyrna.

Pencader 4–H Club Center, Inc.

Wilmington Drama League, Inc.

Council of Churches of Wilmington and New Castle County, Inc.

New Temple Corporation.

Edgemoor Terrace Civic Association, Incorporated.

Hyde Park Civic Association, Inc.

Brookland Terrace Civic Club.

Manor Community Center, Inc.

Collins Park Community and Civic Association, Inc.

Veteran Employees Association, Delaware Division, Pennsylvania Railroad.

Pencader Grange # 60 P. of H. Inc.

Taylor's Bridge Community Center, Incorporated.

Blackbird Community Center, Inc.

Oakhill Community Center, Inc.

The Brookside Community, Inc.

Women's Civic Club of Richardson Park.

Hillside Civic Association.

The Klair Estates Civic Association, Inc.

The Castle Hills Civic Association.

Westview Maintenance Corporation.

Suburban Century Club.

Sussex Chapter of Delaware Humane Association.

Imperial Drive Civic Association.

Fruitland Grange, No. 16, Camden, Delaware.

Windy Hill Civic Association.

Perth Community and Civic Association, Inc.

Women's Club of Claymont.

Swanwyck Estates Civic Association.

The Eastern Shore Fox Hunters' Association.

Delaware Society for Crippled Children and Adults, Inc.

Yorklyn Parent-Teacher Association, Inc.

Wycliffe Civic Association, Inc.

Blue Rock Community Club.

Civic Association of Belvedere and Vicinity.

Lamborn Library Association.

Lutheran Senior Services, Inc.

University Drama Group, Inc.

Central Grange # 61.

Penn Acres Swim Club, Inc.

Viola-Canterbury-Felton Ruritan Club.

Lewes Senior Citizens Center, Incorporated.

Cannon Grange No. 65 P. of H.

Broadcreek Grange No. 59 P. of H.

Midland Grange No. 27 P. of H.

B'nai B'rith Lodge 470.

Jefferson Farms Swim Club, Inc."

purpose of the Amendment, I suggest, was this: to bring order out of the exemption chaos and to remove the General Assembly from interfering with the County tax structure on an *ad hoc* basis. In short, the exemption power was placed "exclusively" within the County whose revenues are affected by an exemption.

The problem put to the Court, as I see it, is not one of repeal of a statute by implication; it is, rather, which law governs when there is a conflict between the Constitution and a statute. No citation is required to show that the former is controlling. But the Court's decision gives continuing viability and effect to the exemption statute, (§ 8104) which is clearly in conflict with the "exclusive" power vested in the County by the Constitution. It is difficult to understand the basis for the ruling because the General Assembly's power to enact any law is grounded on the Constitution and, in the matter of property tax exemptions, that power is denied to the Assembly. Given the Constitutional basis for the County's power, there is not, as I see it, any delegation of power by a senior to a junior legislative body.

I would reverse the judgment of the Superior Court.