The SILVERBROOK CEMETERY
COMPANY, a Delaware
corporation, Plaintiff,

v.

The DEPARTMENT OF FINANCE OF
NEW CASTLE COUNTY, et al.,
Defendants.

Superior Court of Delaware,
New Castle County.

Submitted Sept. 29, 1981.

Decided Jan. 25, 1982.

Richard H. May, of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff.

Dennis J. Siebold, New Castle County Law Dept., Wilmington, for defendants.

WALSH, Judge.

This action represents another phase of the continuing dispute between Silverbrook Cemetery Company (Silverbrook) and New Castle County (County) over the efforts of the County to assess certain of Silverbrook's real property for tax purposes. The background of the controversy is set forth in an opinion of this Court [*Silverbrook Cem. Co. v. Board of Assess. of N.C. Cty.*, Del.Super., 355 A.2d 908 (1976) ] which determined that 9 *Del.C.* § 8104 [1] had not been repealed by a 1971 constitutional amendment which appeared to grant plenary authority to the counties to define tax exempt status. That ruling was upheld by the Delaware Supreme Court, in a majority opinion, although the Court ruled that the controversy should not be remanded to the County Assessment Board. *Board of Assess. Rev., Etc. v. Silverbrook, Etc.*, Del.Supr., 378 A.2d 619 (1977).

---

1.  9 *Del.C.* § 8104 provides in part:

    "No real property owned and used by the organizations listed below or for the purposes stated below, except that which is held by way of investment, shall be liable to taxation and assessment for public purposes by any county or other subdivision of this state.

    \*　　\*　　\*　　\*　　\*　　\*

    Burial lots and cemeteries."

The battle has been renewed by Silverbrook through the seeking of a Writ of Prohibition to prevent the County from proceeding to assess its property on the ground that, by virtue of § 8104 as well as its corporate charter, it remains exempt from the County's assessment power. The County contends that the writ should not issue since there is another legal remedy available to accommodate Silverbrook's grievance but that, in any event, Silverbrook's claim of exemption is without merit.

██ Although the question is not free from doubt, it would appear that Silverbrook has demonstrated that it will incur unreasonable delay and expense in being required to participate in an assessment hearing and, thereafter, appealing an assessment ruling on the theory that the action was a nullity. To that extent, its legal remedy is inadequate. *Canaday v. Superior Court*, Del.Supr., 116 A.2d 678 (1955). The County Board of Assessment is an administrative body which exercises the quasi-judicial power to hear evidence and make rulings which bind the parties in the absence of an appeal. As such, its jurisdiction is subject to control through a writ of prohibition. *Matushefske v. Herlihy*, Del.Supr., 214 A.2d 883 (1965); *Family Court v. Department of Labor and Indus. Rel.*, Del.Ch., 320 A.2d 777 (1974). On balance, the factors which suggest the availability of the writ of prohibition predominate.

I turn now to the merits of Silverbrook's claim of property tax exemption. Silverbrook's argument is two-pronged. It contends that it meets the exemption test contained in § 8104 but, failing that test, it is, nonetheless, exempt under its corporate charter which was legislatively enacted in 1895.

██ Silverbrook's contention that its exempt status is consistent with the legislative intent expressed in § 8104 was, inferentially at least, rejected by this Court in its previous opinion. After tracing the history of this section, it was stated:

"... Moreover, it is sufficient for present purposes to note that § 8104 does not provide an unconditional exemption to the appellants and that upon an appropriate record a reasonable assessment of investment property is sustainable." (355 A.2d 911)

Whether this language be viewed as *dicta* in the context of the earlier opinion is not significant. Upon reflection, I affirm the same view here in attempting to fix the legislative intent. I do not read the Supreme Court's decision as a rejection of that view although it might be argued, with reason, that the issue was not specifically addressed on appeal.

The Delaware cases relied upon by Silverbrook, interpreting the phrase "not held by way of investment" in § 8103, a statutory counterpart of § 8104, do not support its position. In *Kappa Alpha Educational Foundation, Inc. v. Holliday*, Del.Supr., 226 A.2d 825 (1967) it was held that the Kappa Alpha Foundation held its fraternity house property for investment where the property was being used to produce rental income which was then used almost entirely to reduce the mortgage and increase its equity in the property. In *Electra Arms Apt. & Medical Center Foundation v. City of Wilmington*, Del.Supr., 254 A.2d 244 (1969), the Court reached the opposite conclusion where the non-profit corporation which owned the property rented it at reduced levels solely "for the purpose of providing housing for the aged." *Id.*, at 248. In *Electra Arms* the rented property was operated at a loss of approximately $500,000 in a less than three year period, and the record indicated "that there was never an intent to use the property for the purpose of securing profit to its owner." *Id.*, at 248. Silverbrook, however, is a "for profit" corporation which has equity shareholders. It sells a product, burial lots, and presumably seeks to secure a profit for its equity owners in doing so. Moreover, Silverbrook's pursuit of profits for the benefit of its private shareholders has been clearly established, at least for income tax purposes. *Wilmington Memorial Co. v. Silverbrook Cemetery Co.*, Del.Ch., 287 A.2d 405 (1972), aff'd *Wilmington Memorial Co. v. Silverbrook Cemetery Co.*, Del.Supr., 297 A.2d 378 (1972). The

Chancery Court decision contains the following passage:

"The most recent statutory enactment, 30 *Del.C.* § 9102(b)2, specifically differentiates between non-profit and for profit cemetery corporations in determining exemption from corporate income tax. Only cemetery corporations 'no part of the net earnings of which inures to the benefit of any private stockholders or individual may qualify for the exemption. Silverbrook does not qualify.' 287 A.2d at 407.

Silverbrook's interpretation of § 8104 is tenable only if the disputed phrase "held by way of investment" is accorded little or no meaning. Silverbrook would have the Court read the statute as if the phrase were not present, *i.e.*, as the statute existed before the phrase was added in the 1953 recodification of Delaware laws. But the Court is not free to ignore the amendment deliberately enacted by the General Assembly or to construe the statute in such a way as to render the phrase superfluous or meaningless. *Martin v. American Potash and Chemical Corp.*, Del. Supr., 92 A.2d 295 (1952). The insertion of the disputed clause is clear evidence of a legislative intent to remove the blanket exemption which previously existed and to provide in its place an investment test to insure that those who employ private capital in the development of certain activities, previously exempt, for the obtaining of profit should share in the general tax obligation imposed by "counties and other political subdivisions."

The second prong of Silverbrook's argument requires a determination of whether it may look to its corporate charter as the basis for the claimed property tax exemption. Silverbrook's charter, passed by special act of the legislature in 1895, provides in pertinent part:

[T]he cemetery grounds, with the buildings, improvements and appurtenances shall be exempt from taxation and shall not be levied upon or taken by execution. 20 *Del.Laws*, c. 82, § 6.

If § 8104 is accorded the meaning already determined, it is clearly inconsistent with Silverbrook's charter. And, if the two provisions are in "irreconcilable conflict", the later act must prevail under the doctrine of implied repealer. *Green v. County Council of Sussex County*, Del.Ch., 415 A.2d 481 (1980).

Silverbrook's initial argument in support of reconcilability, that the cemetery property is not held for investment purposes and thus is in compliance with the statute, has already been addressed. Whatever may have been the historical pattern of cemetery exemption, I fail to discern any present legislative policy favoring the special treatment of cemeteries because of their unique nature.[2] The 1953 amendment is squarely directed to restricting whatever exemption practices previously existed.

Silverbrook next points to a general provision of the 1953 Delaware Code Annotated which deals with the effect of that code on special acts of incorporation. That provision provides, in pertinent part:

"No private Act . . . or special act of incorporation, in effect on the date of the enactment of this Code, and not revised and brought into this Code, shall be affected by any provision hereof." (1 1953 Del.C. § 105)

From this language Silverbrook argues that the doctrine of implied repealer does not apply to special acts of incorporation. While the language of § 105, broadly considered, may support Silverbrook's view, a more compelling interpretation is that the provision was intended to insure that special acts of incorporation were still to be recognized as valid and ongoing and not voided by the enactment of the comprehensive corporation provisions of the new Code. It cannot seriously be contended that the legislature lacks authority to revoke or

**2.** If any current legislative policy is discernible, as the dissenting opinion notes in *Board of Assess. Rev., Etc. v. Silverbrook, Etc., supra*, 378 A.2d at 623, it is the desire of the General Assembly to transfer to the counties at least the prospective power to grant property tax exemption.

modify through regulatory legislation a corporate status which it created by special act. *Wilmington City Ry. Co. v. Wilmington and B. & S. Ry. Co.*, Del.Ch., 46 A. 12 (1900). The mere fact that such modification occurs through implied repealer does not dilute its effect.

The balance of Silverbrook's argument is directed to the difficulties inherent in tax enforcement as an indication of the legislative intent to provide exemption to cemetery property. It points to the inability of the taxing authority to enforce collection through a monition proceeding directed to occupied burial lots, a practical difficulty recognized in *Mayor, Etc., of Wilmington v. Cathedral Cemetery Co.*, Del.Super., 106 A.2d 706 (1954). But in *Cathedral Cemetery*, the Court refused to recognize the validity of sewer and paving assessments because they could not be enforced against a cemetery "practically filled with graves." (106 A.2d 707)

This case seems more akin to *Hollywood Cemetery Ass'n v. Powell*, 210 Cal. 121, 291 P. 397 (1930), cited in *Cathedral Cemetery* but distinguished on its facts. In *Hollywood*, the Court was confronted with a county assessment on a private cemetery which, like the Silverbrook Cemetery, consisted of approximately sixty percent of its property in the form of sold or occupied gravesites. In response to the identical argument that has been made here by Silverbrook, the Court stated that permitting the assessment would merely "force the corporation to meet a valid assessment of any of its property which could lawfully be sold." *Id.*, 291 P. at 402. The Court also added that the local taxing authority did not have to limit its assessment to that part of the property which could be sold, but rather could base its assessment on the entire tract. This approach would also accommodate Silverbrook's fear that the proprietary rights of individual lot owners, otherwise exempt from execution under 10 *Del.C.* § 4902(a), would be compromised by a monition proceeding.

Silverbrook's concern that, at some point in the future when all lots have been sold and the cemetery is maintained exclusively by perpetual care funds, it will be unable to pay its real estate taxes, is overstated. A speculative inability to pay in the future cannot moot a demonstrated ability to pay a current assessment. The possibility of future change does not control present tax status. *Electra Arms, supra*, at 248. It may well be that, at such future time, the cemetery will no longer be "held for investment purposes" and the problem self-corrected.

In summary, while the assessability of Silverbrook's property is not without its practical difficulties, the authority of the County to assert its right to do so is clear. I express no view on the fairness of any assessment method and it is premature to speculate on the appropriateness of the assessment result. I merely hold that the County is not legally prohibited from the attempt. The petition for writ of prohibition is denied.

IT IS SO ORDERED.